UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-cr-207 (NEB/LIB) |
| Plaintiff, | |
| v. | **ORDER AND**<br>**REPORT AND RECOMMENDATION** |
| Douglas Edward McClendon, | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, upon Defendant Douglas Edward McClendon's ("Defendant") various Motions for discovery and production of evidence, [Docket Nos. 38, 39, 40, 41], as well as, his Motion to Suppress Evidence from Search and Seizure. [Docket No. 36]. The Court held a Motions Hearing on December 17, 2021, regarding Defendant's pretrial motions.[1]

For the reasons discussed herein, Defendant's Motion for Disclosure of Informants, [Docket No. 38], is **GRANTED** in part and **DENIED** in part. Further, Defendant's Motion for Disclosure of Post Conspiracy Statements, [Docket No. 39]; Defendant's Motion for Disclosure of 404(b) Evidence, [Docket No. 40]; and Defendant's Motion for Release of Brady Materials, [Docket No. 41] are **GRANTED**. Additionally, it is recommended that Defendant's Motion to Suppress Evidence from Search and Seizure, [Docket No. 36], be **DENIED**.

---

[1] Based on the representations of the parties at the December 17, 2021, Motions Hearing and for the reasons stated on the record, Defendant's Motion for Compliance with L.R. 12.1, [Docket No. 35], and his Motion to Suppress Statements, [Docket No. 37], were termed as moot. (Minute Entry, [Docket No. 51]).

I.   **Background**

Defendant is charged with one (1) count of conspiracy to distribute fentanyl and other controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (Indictment, [Docket No. 1]).

II.   **Defendant's Motion for Disclosure of Informants. [Docket No. 38].**

Defendant requests an Order from the Court compelling the Government to disclose "the identities of all informants who were witnesses or participants in the crimes charged in the Indictment," and "whose 2dentity would be relevant, helpful to the defense, and essential to a fair determination in this case." (Def.'s Mot. for Disclosure of Identity of Informants, [Docket No. 38]).

In its written response, the Government opposes Defendant's Motion. (Gov't's Response to Def.'s Pretrial Mots., [Docket No. 46], at 3-4). The Government, however, represented that in the event it chooses to call any confidential informant as a witness at trial, the Government will disclose the identities of the informants and will make efforts to have the individual available for an interview with defense counsel at a mutually agreeable time and place. The Government further represents copies of any prior criminal records for trial witnesses will be provided seven (7) days before trial. (Id.).

The Government relies on the "Informer's Privilege" in support of its argument that it is allowed "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957) (citations omitted). There are several exceptions to the privilege. Id. Of those, the one pertinent to the present case considers the "fundamental requirements of fairness" and a defendant's need to prepare an adequate defense. See, Id. at 60–61 ("Where the disclosure of an

2

informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.").

"[T]here is no litmus test for determining when disclosure [of an informant's identity] is required[.]" United States v. Lapsley, 334 F.3d 762, 764 (8th Cir. 2003); See also Roviaro, 353 at 62 ("We believe that no fixed rule with respect to disclosure is justifiable."). However, the Eighth Circuit has indicated a court ruling on a motion for disclosure of an informant's identity "must weigh the defendant's right to information against the government's privilege to withhold the identity of its confidential informants." Lapsley, 334 F.3d at 763–64 (internal quotation marks and citations omitted).

In the case presently before the Court, that balance is best served by requiring the Government to disclose to Defendant the identity of any informant whose testimony the Government intends to introduce at trial in the present case or whose identity is otherwise discoverable under Brady, Giglio, and their progeny, or the Government's other discovery obligations. The Government will not be required, at this time, to disclose the identity of any informant who may have been a mere tipster, who was not directly involved in the charged offense, and whose testimony it does not intend to introduce at the trial in the present case, unless the informant's identity is otherwise discoverable.

Defendant's Motion for Disclosure of Informants, [Docket No. 38], is therefore, granted in part, and denied in part. If the Government determines that it will use any confidential informants as witnesses at trial, the Government shall disclose the identity of those informants to the Defendant and make those informants available for a pretrial interview no later than fourteen (14) calendar days before trial.

**III.   Defendant's Motion for Disclosure of Post-Conspiracy Statements of Co-Defendants. [Docket No. 39].**

Defendant seeks an Order compelling the Government to disclose the post-conspiracy statements of all other co-defendants and unindicted co-conspirators along with a designation of which statements or confessions the Government intends to utilize at trial. (See Def.'s Mot. for Disclosure of Post-Conspiracy Statements of Co-Defendants, [Docket No. 39]). Defendant further seeks an Order compelling the Government to designate which statements or confessions it intends to utilize at trial. (Id.).

In its written response, to the extent Defendant seeks all post-conspiracy statements by co-Defendants or unindicted co-conspirators, the Government opposes Defendant's Motion. (Gov't's Response to Def.'s Pretrial Mots., [Docket No. 46], at pp. 3-4). The Government, however, agrees to provide notice, disclosure, and designation of any post-conspiracy statements it intends to use at trial fourteen (14) days before trial.

Federal Rules of Criminal Procedure 16 is the primary avenue available to a criminal defendant seeking discovery. United States v. Siewert, No. CRIM. 08-4 DWF/SRN, 2008 WL 3165852, at *2 (D. Minn. June 10, 2008) (citing 3D Federal Practice and Procedure Rule 16 Summary, at 206 (2008 ed.)). Fed. R. Crim. P. 16(a)(1)(A-B) allows for discovery of a defendant's statements. Generally, a criminal defendant has no constitutional right to discovery from the Government beyond Rule 16. Siewert, 2008 WL 3165852, at *2. However, as noted above, the Government has agreed to such disclosures here.

To the extent Defendant seeks notice and disclosure of Government's intent to use or refer to and introduce into evidence at trial the statements or confessions of any co-defendant or unindicted co-conspirator, together with a designation of which statements or confessions the

4

Government plans to so utilize, the motion is granted. The Government shall provide such notice fourteen (14) days before trial.

**IV.    Defendant's Motion for Disclosure of 404(b) Evidence. [Docket No. 40].**

Defendant seeks disclosure of any "bad act" or "similar course of conduct" evidence that the Government intends to offer at trial pursuant to Federal Rule of Evidence 404(b). (See Def.'s Mot. for Disclosure of 404(b) Evidence, [Docket No. 40]). Defendant further seeks the Government to identify the witnesses through whom said evidence will be presented at trial. (Id.).

In its written response, the Government suggested that disclosures regarding Rule 404(b) evidence be made no later than fourteen (14) days before trial.

In relevant part, Rule 404(b)(3) provides that the Government must "provide reasonable notice of any" Rule 404(b) "evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(A). In that notice, the Government must also "articulate . . . the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B).

Defendant's Motion for Disclosure of Rule 404(b) Evidence, [Docket No. 40], is granted, as set forth herein. The Court orders the Government to disclose to the Defense as soon as practicable, and in no event later than fourteen (14) days before trial, formal notice of any specific 404(b) evidence it intends to offer, as well as, the purpose for which it intends to offer it into evidence at trial.[2]

---

[2] Federal Rule of Evidence 404(b) does not extend to evidence of acts which are "intrinsic" to the charged offense. United States v. Adediran, 26 F.3d 61, 63 (8th Cir. 1994) (standards applicable to evidence considered under Rule 404(b) do not apply to such "inextricably intertwined" evidence); see United States v. Williams, 900 F.2d 823 (5th Cir. 1990).

**V.     Defendant's Motion for Disclosure of Evidence Favorable to Defendant Under <u>Brady</u>. [Docket No. 41].**

Defendant seeks disclosure of evidence favorable to him which would fall within the authority of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and their progeny. (Def.'s Mot. for Disclosure of Evidence Favorable to Defendant Under Brady, [Docket No. 41]).

The Government, acknowledging its duty to disclose responsive materials and information, represented that it has previously disclosed any evidence favorable to the Defendant within its possession, and that it will continue to comply with its obligations under <u>Brady</u>, <u>Giglio</u>, and their progeny. (Gov't's Response to Def.'s Pretrial Mots., [Docket No. 46], at pp. 5-6).

Defendant's motion seeking disclosure of evidence favorable to him which would fall within the authority of <u>Brady</u>, <u>Giglio</u>, and their progeny is granted. The Government will disclose any and all remaining and/or subsequently discovered, obtained, or obtainable material responsive to <u>Brady</u> to the Defense as soon as said responsive materials are discovered by the Government.[3] The Government will, except as may be otherwise directed within this Order, disclose materials which are responsive to <u>Giglio</u> and related to the impeachment of the Government's witnesses to be called at trial no later than seven (7) days before trial, or when ordered by the trial judge to disclose its trial witnesses, whichever is earlier.

---

[3] The Court notes that in <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995), the United States Supreme Court "emphasized the discretion of the *prosecutor*, not the trial judge, in deciding what evidence is producible under <u>Brady</u>." <u>United States v. Garrett</u>, 238 F.3d 293, 304 n.4 (5th Cir. 2000) (emphasis added). The Sixth Circuit has also explained that "while the <u>Brady</u> rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure." <u>United States v. Clark</u>, 957 F.2d 248, 251 (6th Cir. 1992). That being said, "[i]f [the Government] fails to comply adequately with a discovery order requiring it to disclose <u>Brady</u> material, it acts at its own peril." <u>Id.</u> Accordingly, the Court encourages the Government to carefully evaluate the materials in its possession in light of a liberal understanding of its <u>Brady</u> obligations.

6

**VI.    Defendant's Motion to Suppress Evidence from Search and Seizure. [Docket No. 36].**

Defendant moves the Court to suppress all evidence flowing from the two state court warrants outlined below. (Def.'s Mot. to Suppress Evidence from Search and Seizure, [Docket No. 36]). Defendant argues that the evidence flowing from the search warrant issued on March 12, 2021, should be suppressed because the affidavit submitted in support of the application for this search warrant failed to establish a nexus between the evidence sought and the place to be searched. (Id.). Regarding the search warrant issued on March 15, 2021, Defendant's sole argument is based on the "fruit of the poisonous tree" doctrine. (See, Id.).

### A.   Statement of Facts[4]

The record presently before the Court indicates that, on March 12, 2021, Sheriff Joe Kleszyk, of the Beltrami County Sheriff's Office and assigned to the Paul Bunyan Task Force, applied for a warrant to search both Room 111 and Room 124 at the Best Western located at 2420 Paul Bunyan Drive NW in Bemidji, Minnesota. (See Search Warrant Application, Gov't's Ex. 1, at pp. 1-2).[5] The affidavit that Sheriff Kleszyk[6] drafted and submitted in support of the warrant application sets forth the following:

On March 12, 2021, a concerned citizen (hereinafter, the "CC"), reported to Sheriff Kleszyk that they had knowledge of at least three African American males trafficking controlled substances out of Room 111 and Room 124 of a Best Western in Bemidji, Minnesota. (Id. at p. 3). Specifically, the CC reported that they observed "an abundance of short term traffic coming

---

[4] The facts contained in this section are derived from the Government's exhibits presented in this case.
[5] Government's Exhibit 1 is the warrant application, supporting affidavit, and warrant to search Room 111 and Room 124. At the Motions Hearing, the Government, without objection, offered the warrant application, supporting affidavit, and warrant into evidence as Government's Exhibit 1.
[6] The affidavit in support of the search warrant application provides that Sheriff Kleszyk has worked for the Beltrami County Sheriff's Office since 2008 and is currently assigned as the Commander of the Paul Bunyan Drug Task Force. (Gov't Ex. 1, at p. 2). Sheriff Kleszyk has a bachelor's degree in Criminal Justice from Bemidji State University, and through his career, has investigated DWIs, assaults, burglaries, robberies, narcotics crimes, financial crimes, property damage crimes, and other crimes. (Id.).

and going from the rooms." (Id.). Sheriff Kleszyk was provided with the names of some of the visitors by the CC, and Sheriff Kleszyk recognized those names to be known drug users and distributors. (Id.). The CC reported observing "drug packaging material, and paraphernalia used to ingest controlled substances" inside of Room 124, and they also reported observing the occupants of Room 111 and Room 124 entering each other's rooms and standing outside of the rooms with each other. (Id.). The CC believed the occupants of Room 124 and Room 111 were working together to sell drugs. The CC further informed Sheriff Kleszyk that an individual they saw leaving Room 124 stated, "'[T]hey have whatever you want.'" (See Search Warrant Application, Gov't's Ex. 1, at p. 3)

Sheriff Kleszyk also received information on that same day from a Confidential Reliant Informant (the "CRI"). The CRI had a history of previously conducting controlled buys of controlled substances; had provided information used in previous search warrants; and had previously provided information that led to the seizure of controlled substances and firearms. (Id.). The CRI informed Sheriff Kleszyk that they had been in Room 124 of the Best Western in the last 72 hours where, as a welcomed guest, they described observing amounts of numerous different types of controlled substances. (Id.). Sheriff Kleszyk provided that the amount of the controlled substances described by the CRI were amounts associated with distribution rather than for personal use. (Id.). The CRI also informed Sheriff Kleszyk that they observed drugs in Room 124 being sold by an African American male. (Id. at p. 4).

Sheriff Kleszyk provided that he did not obtain guest registry information from the Best Western in order to avoid alerting the subjects of his investigation. (See Search Warrant Application, Gov't's Ex. 1, at p. 4). The search warrant application further provided that Sheriff Kleszyk reasonably believed that the occupants of Room 111 and Room 124 were working

8

together because in his experience it is common for individuals selling controlled substances from hotel rooms to use multiple rooms in an attempt to conceal contraband. (Id.).

On that same day, March 12, 2021, the Honorable John Melbye, District Court Judge of Beltrami County of the State of Minnesota, based on the information provided by Sheriff Kleszyk, concluded that there was probable cause to believe that contraband or evidence of a crime would be found in the hotel rooms, and he issued a warrant to search Room 111 and Room 124 (the "March 12th Search Warrant") of the Best Western located at 2420 Paul Bunyan Drive NW, in Bemidji, Minnesota. (See Search Warrant, Gov't's Ex. 1, at pp. 1-3).

A few hours later, on March 12, 2021, the warrant was executed for Room 111 and Room 124. (See Search Warrant Application, Gov't's Ex. 2, at p. 3).[7] During the search of Room 111, law enforcement seized, among other things, Defendant's identification; male clothing; 100 grams of purported fentanyl; 12 grams of purported methamphetamine; 68 blue fentanyl pills; a packaging scale; receipts from money transfers; a black iPhone; and a red iPhone. (Id.).

On March 15, 2021, Sheriff Kleszyk filed an application for a second state court warrant to authorize law enforcement officers to search the contents of, among other things, the black iPhone and red iPhone seized during the search of Room 111 a few days prior. (Id. at p. 1). In the affidavit filed in support of the search warrant, Sheriff Kleszyk provided essentially the same information as he provided in reference to the March 12th Search Warrant. (See Gov't's Ex. 1). However, Sheriff Kleszyk also provided additional information. Sheriff Kleszyk further indicated that, upon executing the March 12th Search Warrant, both Room 111 and 124 were occupied when law enforcement knocked on the doors, but the doors were not opened by the rooms' occupants. (See Search Warrant Application, Gov't's Ex. 2, at p. 3). When law enforcement entered Room

---

[7] Government's Exhibit 2 is a warrant application, supporting affidavit, and warrant to search two iPhones recovered from Rooms 111 and 124. At the Motions Hearing, the Government, without objection, offered the warrant application, supporting affidavit, and warrant into evidence as Government's Exhibit 2.

111, there were signs that the occupants had jumped out the window and fled. (Id.). While clearing Room 111, an iPhone was observed on the nightstand with a visible recent message displaying, "'[D]o you have my gun?'" (Id.). Sheriff Kleszyk provided that no further information was obtained about the iPhone conversation at that time because there was no warrant to search the phone, but Sheriff Kleszyk reasonably believed that this communication was sent to someone nearby during law enforcement's attempt to enter the room. (Id.).

Sheriff Kleszyk further provided that, during the search of Room 124, an individual was found identified as Christopher Richard. (See Search Warrant Application, Gov't's Ex. 2, at pp. 3-4).

As a result of the search of Rooms 111 and 124, law enforcement seized, among other things, 28 grams of methamphetamine, 37 blue fentanyl pills, a black phone, and a red iPhone. (Id. at p. 4).

Sheriff Kleszyk also provided that the CRI had reported that the individuals selling drugs from Rooms 111 and 124 of the Best Western utilized Facebook to communicate with their clientele, and that Facebook, as a social media platform, is an application capable of being downloaded on a cellular device. (Id.). Sheriff Kleszyk also provided that, based on his experience, he knows individuals involved in the drug trafficking often use multiple phones for illegal activities; that reviewing information on these devices could assist in identifying the owner or user of the phone; and that reviewing the information on the mobile devices seized in Room 111 would assist in identifying the occupants of the room who fled and eluded arrest. (Id.).

Judge Melbye determined that probable cause existed to support the issuance of the March 15, 2021, search warrant (the "March 15th Search Warrant"). (Search Warrant, Gov't's Ex. 2, at p. 3). Thereafter, the Government executed the March 15th Search Warrant.

## B. Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009) (citing Katz v. United States, 389 U.S. 347, 357 (1967)).

The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered

11

in determining the existence of probable cause.'" United States v. Wiley, No. 09–cr–239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005)) (alterations in Wiley). In addition, the issuing court's "determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238–39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

    **C. Analysis**

        **1. March 12, 2021, Search Warrant**

Defendant seeks an Order of this Court suppressing all evidence flowing from the March 12th Search Warrant for Rooms 111 and 124 of the Best Western in Bemidji. (Def.'s Mem., [Docket No. 54], at pp. 1-10). Defendant specifically argues that all evidence should be suppressed because, while arguable probable cause existed to support searching Room 124, the affidavit in support of the March 12th Search Warrant fails to demonstrate a nexus between any specific items to be searched for and for Room 111. (Id. at pp. 4-5).

"[A] magistrate reviewing a warrant application is charged with the duty of determining whether a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Alexander, 574 F.3d 484, 489 (8th Cir. 2009) (quoting United States v. Hart, 544 F.3d 911, 914 (8th Cir. 2008)). "[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue[.]" United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) (citing United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993)).

Considering the affidavit submitted in support of the March 12th Search Warrant application which warrant ultimately authorized law enforcement to search Room 111, Judge Melbye could reasonably have concluded that, in addition to Room 124, there was a fair probability that evidence of drug sales and trafficking would be found in Room 111. In other words, the affidavit established a nexus between the specific evidence to be searched for and Room 111.

The Court notes that Sheriff Kleszyk provided in his supporting affidavit the details of the investigation, including the fact that it was reported to Sheriff Kleszyk by a concerned citizen that there was drug packaging material and paraphernalia used to ingest controlled substance observed in Room 124; it was reported that the occupants of Room 124 and Room 111 were observed standing together outside and entering each other's rooms; and that frequent individuals observed briefly visiting Room 124 were known to law enforcement as drug users and distributors. Another witness, a Confidential Reliant Informant, who had previously worked reliably with law enforcement, reported that, as a welcomed guest in Room 124, they observed a large amount of drugs there, as well as, a drug sale occur by an African American male. Lastly, Sheriff Kleszyk attested that, based on his training and experience, it is common for individuals selling controlled substances from hotel rooms to use multiple rooms as a method of attempting to conceal contraband, and that, as such, he reasonably believed that the occupants of Room 111 and Room 124 were known to each other and were working together to further drug trafficking.

Upon review of Sheriff Kleszyk's affidavit, this Court finds that Judge Melbye had a substantial basis upon which to believe that probable cause existed for the issuance of the March 12th Search Warrant as it relates both to Room 124 and Room 111. The affidavit contains information concerning statements from two witnesses, known to law enforcement, stating the existence of a large amount of drugs, drug paraphernalia, and drug sales occurring out of Room

124, and reports of close quarters interaction between the occupants of Room 124 and the occupants of Room 111.

The affidavit articulates a sufficient basis upon which to find that a fair probability existed to conclude that the search of Room 124 and of Room 111 would uncover evidence of drug sales, as well as, a sufficient basis upon which to demonstrate a nexus between the drug related items to be searched for Room 124 and Room 111; thus, there was probable cause for Judge Melbye to issue the search warrant as it relates to both Room 124 and Room 111.

In addition, assuming solely for the sake of argument that the affidavit of Sheriff Kleszyk was not sufficient to establish probable cause or a nexus between the items to be searched for and Room 111, the Court concludes that officers relied in good faith on the probable cause determination by Judge Melbye when executing the March 12th Search Warrant.

Although evidence obtained as a result of the execution of a warrant unsupported by probable cause is generally inadmissible, Mapp v. Ohio, 367 U.S. 643 (1961), there is an exception "when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." Davis v. United States, 564 U.S. 229, 238-39 (2011) (quoting United States v. Leon, 468 U.S. 897, 922 (1984)). There are four circumstances in which the good-faith exception does not apply:

> (1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) "the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.

United States v. Marion, 238 F.3d 965, 969 (2001).

Defendant asserts that the March 12th Search Warrant falls within the third and fourth Leon exception. In support, Defendant first asserts that the March 12th Search Warrant's affidavit lacked

14

any information as to whether law enforcement independently corroborated the information by the two witnesses. (Def.'s Mem., [Docket No. 54], at p. 9). "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998) (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)).

In the present case, Sheriff Kleszyk's affidavit in support of his application for the March 12th Search Warrant indicated that the CC was "fully identifiable" to him, and that the CRI had previously provided reliable information in the past. Therefore, Judge Melbye had a substantial basis on which to conclude that the information provided by both the CC and CRI was reliable. While Defendant is correct in asserting that the affidavit contains no indication whether law enforcement independently corroborated the information provided by the CC and the CRI, the two witnesses corroborated each other—both witnesses independently reported being inside of Room 124 at different times where they each observed a large number of controlled substances. See Williams, 10 F.3d at 593-94 ("If [some] information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.").

Defendant next asserts that the March 12th Search Warrant was "facially deficient in addressing criminal activity in Room 111" because neither witness was present in Room 111, nor did they observe drug sales, drugs, or drug paraphernalia in that room. (Def.'s Mem., [Docket No. 54], at pp. 9-10). However, the record currently before the Court shows that, in his affidavit in support of his application for a search warrant, Sheriff Kleszyk presented sufficient facts indicating that the occupants of Room 111 were known to, were in close proximity with, and were observed

15

involved in frequent interactions with the occupants of Room 124—a room where two witnesses independently observed drugs, drug sale, and drug paraphernalia. In his affidavit, Sheriff Kleszyk further attested that, based on his training and experience, individuals selling drugs from hotel rooms typically use more than one room in an attempt to conceal contraband.

Thus, the Court concludes that the officers involved relied in good faith on the March 12th Search Warrant which had been issued by Judge Melbye.

Therefore, to the extent Defendant's Motion to Suppress Evidence from Search and Seizure, [Docket No. 36], seeks an Order of this Court suppressing evidence flowing from the execution of the March 12th Search Warrant, the undersigned recommends that Defendant's Motion Suppress Evidence from Search and Seizure, [Docket No. 36], be **DENIED**.

### 1. March 15, 2021, Search Warrant

Defendant also seeks an Order of this Court suppressing all evidence obtained in the August 1, 2021, search of the two iPhones seized during the March 12, 2021, search of Room 111. (Def.'s Mem., [Docket No. 54], at p. 10). Defendant acknowledges that the August 1, 2021, search of the two iPhones was conducted pursuant to the March 15th Search Warrant. (Id.). However, Defendant argues that the March 15th Search Warrant, which was secured to conduct the August 1, 2021, search of the two iPhones, is the "fruit of the poisonous tree," and it must be suppressed because the March 12th search of Room 111 was invalid. (Id.).

"Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." United States v. Simpson, 439 F.3d 490, 493–94 (8th Cir. 2006) (internal quotations omitted) (quoting Hamilton v. Nix, 809 F.2d 763, 765 (8th Cir. 1987)).

In the present case, the Court has now found that the search of Room 124 and Room 111 of the Best Western in Bemidji conducted pursuant to the March 12th Search Warrant issued by

Judge Melbye was constitutionally permissible. Therefore, no taint was created when the underlying evidence seized during the execution of the March 12th Search Warrant was used in Sheriff Kleszyk's application for the March 15th search warrant to search the two iPhones seized from Room 111.

Defendant fails to offer any other basis other than his "fruit of the poisonous tree" argument as to why any iPhone content evidence obtained through the execution of the March 15th Search Warrant should be suppressed. Defendant does not allege that the March 15th Search Warrant, as drafted, itself lacked probable cause.

Therefore, to the extent Defendant's Motion to Suppress Evidence from Search and Seizure, [Docket No. 36], seeks an Order of this Court suppressing all evidence flowing from the August 1, 2021, search of the two iPhones, the undersigned recommends that Defendant's Motion to Suppress Evidence from Search and Seizure, [Docket No. 36], be **DENIED**.

### VII. Conclusion

Thus, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Defendant's Motion for Disclosure of Informants, [Docket No. 38], is **GRANTED in part and DENIED in part**, as set forth above;

2. Defendant's Motion for Disclosure of Post-Conspiracy Statements of Co-Defendants, [Docket No. 39], is **GRANTED**, as set forth above;

3. Defendant's Motion for Disclosure of 404(b) Evidence, [Docket No. 40], is **GRANTED**, as set forth above; and

4. Defendant's Motion for Disclosure of Evidence Favorable to Defendant Under Brady, [Docket No. 41], is **GRANTED**, as set forth above.

Further, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendant's Motion to Suppress Evidence from Search and Seizure, [Docket No. 36], be **DENIED**.

Dated: February 9, 2022                              s/Leo I. Brisbois
                                                     Hon. Leo I. Brisbois
                                                     U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.