UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-CR-207(2) (NEB/LIB) |
| Plaintiff, | |
| v. | ORDER ACCEPTING REPORT AND RECOMMENDATION |
| DOUGLAS EDWARD MCCLENDON, | |
| Defendant. | |

This case comes before the Court to address objections to a Report and Recommendation's resolution of Fourth Amendment issues. The Beltrami County Sheriff's Office obtained and executed two search warrants—the first to search Rooms 111 and 124 at a Best Western and the second to search cell phones found in Room 111. McClendon moves to suppress the evidence from the search of Room 111 and the cell phones. In a Report and Recommendation, United States Magistrate Judge Leo I. Brisbois recommends that this Court deny the motions to suppress. McClendon objects. For the reasons below, the Court overrules McClendon's objection and accepts the R&R.

## BACKGROUND

The R&R details the undisputed facts and procedural history of this case. (ECF No. 63 ("R&R") at 7–10.) The Court lays out the facts necessary to rule on the objections.[1]

---

[1] In so doing, the Court cites the R&R and incorporates the citations it contains.

I.   **Warrant for Hotel Rooms**

On March 12, 2021,[2] Sheriff Joe Kleszyk of the Beltrami County Sheriff's Office applied for a warrant to search Rooms 111 and 124 at the Best Western in Bemidji, Minnesota. (R&R at 7.) Kleszek's affidavit supporting the warrant application stated that a concerned citizen ("CC") reported to him that three black males were trafficking controlled substances out of Rooms 111 and 124. (*Id.*) CC was "fully identifiable" to Kleszyk. (Government Exhibit 1 at 3.) The affidavit explained that CC observed drug paraphernalia in Room 124 and "an abundance of short term traffic coming and going from the rooms." (R&R at 7–8.) The occupants of the separate rooms were among those moving between the rooms. (*Id.* at 8.) When CC provided Kleszyk with a list with names of some of the visitors in the rooms, "Kleszyk recognized the names to be known drug users and distributors." (*Id.*) And CC overheard a person leaving Room 124 stating, "[T]hey have whatever you want." (*Id.*)

Kleszyk also received information about Room 124 from a Confidential Reliant Informant ("CRI"). (*Id.*) The CRI told Kleszyk that he or she was in Room 124 and observed large quantities of various drugs (consistent with distribution). (*Id.*) The CRI also saw a black male selling drugs in Room 124. (*Id.*)

---

[2] All of the events pertaining to the warrant for the hotel rooms occurred on March 12, 2021. (R&R at 7–9.) This includes the information provided by the informants (the Concerned Citizen and the Confidential Reliant Informant), the application, the issuance, and the execution of the warrant. (*Id.*)

2

Kleszyk stated in the affidavit that he reasonably believed the occupants of Rooms 111 and 124 were working together. (*Id.* at 8–9.) He explained that, in his experience as an officer,[3] it is common for people selling drugs from hotel rooms to use multiple rooms to conceal the drugs. (*Id.* at 9.)

A state court judge issued the warrant, concluding there was probable cause to believe that contraband or evidence of a crime would be found in both hotel rooms. (*Id.*) During the execution of the warrant, officers seized, among other things, McClendon's identification, male clothing, fentanyl, methamphetamine, a packaging scale, receipts from money transfers, and two mobile phones. (*Id.*)

## II.  Warrant for Mobile Phones

A few days after executing the warrant for the hotel rooms, Kleszyk applied for a second warrant for the contents of the mobile phones. (*Id.*) Kleszyk's affidavit for the mobile phones was similar to his affidavit for the hotel rooms. (*Id.*) He stated that Rooms 111 and 124 were occupied when the warrant was executed, but the occupants had jumped out of a window and fled when the officers arrived. (*Id.* at 10.) While clearing Room 111, officers observed an iPhone on the nightstand, displaying a visible recent message: "[D]o you have my gun?" (*Id.*) Kleszyk's warrant application sought to search this phone and another. (*Id.*) Kleszyk explained that he believed the drug traffickers were

---

[3] Kleszyk has been a licensed police officer since 2007. (Government Exhibit 1 at 2.) He has worked in the Sheriff's Office since 2008 and is currently assigned to a drug task force. (R&R at 7 n.6.)

using the mobile phones for illegal activities and that the information on the phones could help the officers identify the occupants of the hotel rooms. (*Id.*)

A judge determined probable cause existed to support a search warrant for the mobile phones, which the officers then executed. (*Id.*)

### III. Procedural History

McClendon moves to suppress the evidence seized from Room 111 and the mobile phones, arguing that the hotel rooms warrant application lacked probable cause and that the evidence recovered from the mobile phones must also be suppressed. (ECF No. 36 at 1.) The R&R recommends denying McClendon's motion. (R&R at 18.) McClendon objects to the R&R and argues this Court should not accept the recommendation because the warrant for the hotel rooms as applied to Room 111 failed to demonstrate the necessary nexus, and consequently the evidence from the cell phones must also be suppressed. (ECF No. 73 ("Obj.") at 1.)

## ANALYSIS

### I. Standard of Review

The Court reviews the portions of the R&R to which McClendon objects *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. LR 72.2(b)(3).

## II. Motion 1: Warrant for Hotel Rooms

### A. *Probable cause standard*

McClendon argues that there was no probable cause[4] for the Room 111 warrant because the warrant application did not sufficiently establish a nexus between Room 111 and the items to be searched in the room. For probable cause to exist "there must be evidence of a nexus between the contraband and the place to be searched. . . ." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016) (citation omitted).

With this standard in mind, the Court must determine whether the warrant is based in probable cause by using a "common sense approach," "considering the totality of the circumstances," and, with no evidentiary hearing, looking only to "the four corners of the affidavit." *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) (citation omitted). In its probable cause determination, the Court must afford an issuing judge "substantial deference." *United States v. Evans*, 4 F.4th 633, 636 (8th Cir. 2021). And ultimately, when reviewing the issuance of a search warrant, the Court must determine

---

[4] The Fourth Amendment requires probable cause be shown before a judge authorizes a search warrant. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007).

5

whether the judge had a "substantial basis" for finding probable cause. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

### B.     Informant CC's reliability

McClendon's main contention is that the affidavit supporting the Room 111 warrant relies on information from informant CC. "[W]hen determining whether an informant's tip supports a finding of probable cause," the Court must "engage in 'a totality-of-the-circumstances analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip. . . .'" *United States v. Nolen*, 536 F.3d 834, 839 (8th Cir. 2008) (citing *Gates*, 462 U.S. at 238). To assess reliability, the Court considers whether the informants were known (instead of anonymous) and also whether the informants have previously provided helpful information. *Id.* at 839–40.

CC is a "unproven informant" without a "track record of supplying information" to the officers. *Id.* at 840. Because there is no anonymity, CC's information is "entitled to some credibility," but the information must be corroborated by independent evidence, albeit to a lesser extent than if CC was anonymous. *Id.*; *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).

McClendon argues that CC's information about Room 111 is unreliable because it was not independently corroborated by the officers. CC's information was, however, corroborated by the CRI—the information from CC and the CRI was "reciprocally

corroborative."[5] *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998); *see also United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) ("Even the corroboration of minor, innocent details" can support a probable cause finding.) (quotation marks and citation omitted). McClendon is correct that the CRI did not provide information about Room 111 to corroborate CC's observations about the room, but CC's information about Room 124 was corroborated by the CRI's credible information. "If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." *Williams*, 10 F.3d at 593 (citing *Gates*, 462 U.S. at 233–34). CC's information specifically about Room 111 is reliable because the information about Room 124 was corroborated.

C.     *Totality of the circumstances*

Even assuming reliability, McClendon argues that CC's observations cannot establish a nexus between Room 111 and criminal activity. He asserts the information only established that the people in Rooms 111 and 124 knew each other and that Room 111 had visitors known in the drug business. Neither fact, McClendon contends,

---

[5] The CRI's reliability is not in dispute. *See Nolen*, 536 F.3d at 839–40 (explaining that known informants with a history of reliable information are reliable) (*citing Florida v. J.L.*, 529 U.S. 266, 270 (2000)). Instead, McClendon argues that the CRI's reliable information is irrelevant because it did not speak to Room 111. But the CRI's reliable information is relevant to CC's reliability.

establishes probable cause. McClendon fails to mention that the affidavit also relies on Kleszyk's experience to establish probable cause.

"In determining whether probable cause exists, we recognize that the police possess specialized law enforcement experience and thus may 'draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous.'" *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005) (citation omitted); *see also United States v. Caves*, 890 F.2d 87, 94 (8th Cir. 1989). Kleszyk attested that, based on his experience, it is common for individuals selling drugs to use multiple rooms to conceal their activities and that he reasonably believed that the occupants of Rooms 111 and 124 were trafficking drugs together.

Considering the totality of the circumstances, the issuing judge had a substantial basis to conclude the requisite nexus existed to issue the warrant for the hotel rooms. The Court will not suppress the evidence recovered from Room 111.[6]

### III.     Motion 2: Warrant for Cellular Phones

McClendon's second motion seeks suppression of the evidence recovered from the cell phones found in Room 111 under the "fruit of the poisonous tree" doctrine. Under

---

[6] McClendon argues that the warrant for the hotel rooms was so facially deficient that the good-faith exception would also not apply. Under the good-faith exception, the Court asks if the warrant was "so lacking" in probable cause or was "so facially deficient" so that an officer relying on the warrant would be unreasonable. *United States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)). Because the Court finds the warrant sufficiently established probable cause, it will not consider whether the good-faith exception applies.

this rule, evidence obtained "directly or indirectly through the exploitation of police illegality" is inadmissible. *United States v. Simpson*, 439 F.3d 490, 493 (8th Cir. 2006). McClendon argues that this exclusionary rule bars any evidence found on the iPhones because the "phones would not have been searched but for the illegal search of room 111." (Obj. at 7.) The search of Room 111 was not illegal because it was under a valid search warrant, so the Court will not suppress the evidence recovered from the cell phones.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's objection (ECF No. 73) is OVERRULED;

2. The Report and Recommendation (ECF No. 63) is ACCEPTED; and

3. Defendant's Motion to Suppress Evidence from Search and Seizure (ECF No. 36) is DENIED.

Dated: May 9, 2022                           BY THE COURT:

                                             s/Nancy E. Brasel
                                             Nancy E. Brasel
                                             United States District Judge